**SIMMONS AIRLINES, Individually and d/b/a American Eagle, Appellant,**

v.

**Michael LAGROTTE, Appellee.**

**No. 05-00-00656-CV.**

Court of Appeals of Texas, Dallas.

Aug. 3, 2001.

Kirsten M. Castaneda, Michael V. Powell, Locke Liddell & Sapp, LLP, Thomas L. Case, Barbara Kay Salyers, Thomas L. Case & Associates, P.C., J. Hunter Johnson, Fletcher & Springer, L.L.P., Dallas, for Appellant.

Jonathan T. Suder, Friedman, Young, Suder & Cooke, Fort Worth, Jeffrey S. Levinger, Carrington Coleman Sloman & Blumenthal, Dallas, for Appellee.

Before Chief Justice THOMAS and Justices LAGARDE and BRIDGES.

## OPINION

LAGARDE, Justice.

Simmons Airlines, Inc. ("Simmons") appeals the trial court's final judgment, following a jury trial, in favor of Michael Lagrotte. The jury found that Simmons acted with malice in terminating appellee for the sole reason that he refused to perform an illegal act. The trial court entered judgment for appellee on jury findings for $2,354,504 in actual damages and $3,459,008 in exemplary damages.[1]

---

1. The trial court modified the jury's $7,000,000 exemplary damages award pursu-    ant to section 41.008(b) of the civil practice

The trial court denied Simmons's motions for judgment notwithstanding the verdict and for new trial.

■ In its first point of error, Simmons contends the trial court erred in entering judgment against Simmons because the trial court impermissibly extended the *Sabine Pilot* exception[2] to apply to "just cause" employment relationships. Specifically, Simmons contends that because appellee was not an at-will employee, but was protected by a collective bargaining agreement and could not be terminated without "just cause," appellee had no cause of action under the *Sabine Pilot* exception. For reasons that follow, we sustain Simmons's first point of error, reverse the trial court's judgment, and render a take-nothing judgment against appellee.

### Background

In November 1996, appellee was a commercial airline pilot for Simmons. On November 24, 1996, appellee was scheduled to pilot American Eagle Flight 3701, an early afternoon flight in an ATR 42 turboprop from the Dallas/Fort Worth International Airport (DFW) to Houston's Hobby Airport. The weather forecasts showed freezing rain from the surface to as high as 16,000 feet. Because a similar American Eagle ATR crashed under similar conditions in October 1994, appellee was concerned and took various steps to gather updated weather information. Appellee

contends the dispatch supervisor and the director of flight operations pressured him to fly. That pressure resulted in Flight 3701 taking off at approximately 2:00 p.m., with appellee as the pilot-in-command.

Once in flight, appellee immediately encountered severe icing conditions. Dan Betka, appellee's first officer, requested an expedited climb from air traffic control, which was granted to 4,000 feet. Unfortunately, the icing conditions worsened between 3,000 and 4,000 feet. When a request to move to a higher altitude was denied, appellee and Betka decided to descend and return to DFW. Once on the ground, appellee was told to contact crew scheduling immediately. Simmons's lead coordinator, Henry Lindemuth, told appellee Flight 3701 was being refueled and appellee was to fly it to Houston. When appellee refused to fly the plane, Lindemuth told him that he was suspended. Appellee was later terminated. Appellee filed a grievance with the pilot's union to challenge his termination under the union's collective bargaining agreement (CBA). The union represented appellee in the grievance for several months, but, in March 1997, appellee withdrew his grievance and filed this lawsuit.

Appellee brought his wrongful discharge claim under the *Sabine Pilot* exception to the employment-at-will doctrine. Appellee contends he was terminated for refusing to perform various illegal acts,[3] all relating to

and remedies code. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 41.008(b) (Vernon 1997).

2. The exception is named after the Texas Supreme Court decision in *Sabine Pilot Service, Inc. v. Hauck*, 687 S.W.2d 733 (Tex.1985), which created a narrow exception to the employment-at-will doctrine. Under *Sabine Pilot*, an at-will employee may maintain a common-law cause of action for wrongful discharge if the employee was discharged for the sole reason that he refused to perform

an illegal act carrying criminal penalties. *Sabine Pilot*, 687 S.W.2d at 735.

3. Appellee contends he refused to perform acts derived from three federal aviation regulations (FARs) and two Texas Penal Code provisions. *See* 14 C.F.R. §§ 91.13(a), 121.627(a), and 121.629(a) (2001) (all prohibiting the operation of an aircraft in unsafe conditions); *see also* TEX. PEN.CODE § 22.04(a) (Vernon Supp.2001) (reckless injury to a child); TEX. PEN.CODE § 22.05(a) (Vernon 1994) (reckless endangerment). Because of

his refusal to fly in severe icing conditions. Simmons contends appellee exhibited poor judgment during Flight 3701 by failing to execute the severe icing checklist before deciding to return to DFW, and was terminated because the Flight 3701 incident was not the first time appellee endangered lives by exhibiting poor piloting judgment. Simmons issued a "Final Advisory"[4] outlining the reasons for appellee's termination. That advisory indicated Simmons terminated appellee for exhibiting poor judgment during Flight 3701. The advisory also mentioned a May 1996 incident in Oklahoma City where appellee, while taxiing toward the gate, caused the plane he was piloting to lose control and collide with ground equipment. Simmons issued a "Second Advisory" following that incident, which was an advanced step in Simmons's progressive discipline program. There was also testimony that a March 1996 report, which was known as the Borneman Report and concerned appellee's activities as pilot-in-command, played a role in Simmons's decision to terminate appellee. It is undisputed that appellee was not an at-will employee, but, instead, was protected by the pilot union's CBA. The CBA provided that pilots could not be disciplined or discharged without "just cause" and provided a grievance and arbitration procedure for interpretation and application of the CBA's provisions.

## Employment–At–Will Doctrine

The long standing rule in Texas is that employment for an indefinite term may be terminated at will and without cause. *E. Line & R.R.R. Co. v. Scott*, 72 Tex. 70, 76, 10 S.W. 99, 102 (1888). Although the Texas Legislature has created various statutory exceptions to the employment-at-will doctrine,[5] the *Sabine Pilot* exception is the

our disposition of Simmons's first point of error, we do not reach Simmons's contention that these illegal acts do not carry criminal penalties and, therefore, the *Sabine Pilot* exception does not apply.

4. A "Final Advisory" is the final step in Simmons's progressive discipline program.

5. *See, e.g.*, Tex. Gov't Code Ann. § 554.002 (Vernon Supp.2001) (prohibiting retaliation against public employees for reporting, in good faith, the employing governmental entity's or fellow employee's violations of law to an appropriate law enforcement agency); Tex. Lab.Code Ann. § 21.055 (Vernon 1996) (prohibiting retaliation against an employee who opposes a discriminatory practice, makes or files a charge, files a complaint, or testifies, assists, or participates in any manner in an investigation, proceeding, or hearing); Tex. Lab.Code. Ann. § 451.001 (Vernon 1996) (prohibiting retaliation for filing a workers' compensation claim in good faith); Tex. Lab.Code Ann. § 411.082 (Vernon 1996) (prohibiting retaliation against an employee for using the telephone service to report in good faith an alleged violation of an occupational health and safety law); Tex. Health & Safety Code Ann. § 161.134 (Vernon 2001) (prohibiting retaliation against an employee of a health care facility who reports illegal activity); Tex. Lab. Code Ann. § 101.052 (Vernon 1996) (prohibiting denial of employment based on union membership or nonmembership); Tex. Gov't Code Ann. § 431.006 (Vernon Supp.2001) (prohibiting discharge because of active duty in the state military forces); Tex. Civ. Prac. & Rem.Code Ann. § 122.001 (Vernon 1997) (prohibiting discharge because of jury service); Tex Lab.Code Ann. § 21.051 (Vernon 1996) (prohibiting discrimination based on race, color, disability, religion, national origin, age, or sex); Tex. Fam.Code Ann. § 158.209 (Vernon Supp.2001) (prohibiting discrimination based on child support withholding order); Tex. Health & Safety Code Ann. § 592.015 (Vernon 1992) (mandating that mentally retarded individuals receive equal employment opportunities); Tex. Elec.Code Ann. § 276.004 (Vernon 1986) (subjecting employer to criminal liability for prohibiting employee from voting); Tex. Elec.Code Ann. § 276.001 (Vernon 1986) (creating felony offense for employer who retaliates against employee for voting a certain way); Tex. Elec.Code Ann. § 161.007 (Vernon Supp.2001) (creating criminal liability for employer who prohibits or retaliates against employee for attending a political convention as

only common-law exception recognized in Texas.[6] In *Sabine Pilot,* the Texas Supreme Court carved out a "very narrow exception" to the employment-at-will doctrine. *Sabine Pilot,* 687 S.W.2d at 735. Under the *Sabine Pilot* exception, an employee may maintain a common-law claim for wrongful discharge if the sole reason for the employee's discharge was his refusal to perform an illegal act. *Id.* The supreme court emphasized the narrowness of this exception and further held that it is the plaintiff's burden to prove by a preponderance of the evidence that his discharge was for no reason other than his refusal to perform an illegal act. *Id.* If an at-will employee's complaint does not fall under this narrow exception, the employee does not have a common-law claim for wrongful discharge.

■ Appellee does not dispute that he was a "just cause" employee. Instead, appellee contends public policy demands that the *Sabine Pilot* exception apply equally to "just cause" employees. Appellee asks this Court to uphold the trial court's extension of the public policy exception under *Sabine Pilot* and allow the exception to apply to contractual, "just cause" employees. We decline to do so.

■ It is not for an intermediate appellate court to undertake to enlarge or extend the grounds for wrongful discharge

under the employment-at-will doctrine. If such an exception is to be created, the Texas Supreme Court should do it. *Swilley v. McCain,* 374 S.W.2d 871, 875 (Tex. 1964); *Hancock v. Express One Int'l, Inc.,* 800 S.W.2d 634, 636 (Tex.App.—Dallas 1990, writ denied). The Texas Supreme Court has twice declined to add an exception to this doctrine, refusing to recognize a cause of action for a private employee who was discharged for reporting illegal activities. *Austin v. Healthtrust, Inc.,* 967 S.W.2d 400, 403 (Tex.1998); *Winters v. Houston Chronicle Publ'g Co.,* 795 S.W.2d 723, 724–25 (Tex.1990). The Texas Supreme Court has also refused to imply a duty of good faith and fair dealing in the employment relationship. *City of Midland v. O'Bryant,* 18 S.W.3d 209, 216 (Tex. 2000). In each of these cases, the Texas Supreme Court declined to recognize new common-law causes of action for wrongful discharge because of the "variety of statutes that the Legislature has already enacted to regulate employment relationships." *Id.* at 215–16.

■ The doctrine of stare decisis is applicable to trial and appellate courts, and we must follow the law as previously declared and applied in the courts in this state. *Watson v. Zep Mfg. Co.,* 582 S.W.2d 178, 180 (Tex.Civ.App.—Dallas 1979, writ ref'd n.r.e.). The Texas Supreme Court emphasized the narrowness of the excep-

a delegate); Tex. Lab.Code Ann. § 52.041 (Vernon 1996) (subjecting employer to fine for coercing employee to purchase certain merchandise); Tex. Health & Safety Code Ann. § 81.102 (Vernon 2001) (limiting an employer's ability to require employee to undergo test for AIDS virus). Some of these provisions apply to both at-will and "just cause" employees.

**6.** The Texas Supreme Court also attempted to expand the employment-at-will doctrine in *McClendon v. Ingersoll-Rand Co.,* 779 S.W.2d 69 (Tex.1989), *rev'd,* 498 U.S. 133, 111 S.Ct. 478, 112 L.Ed.2d 474 (1990), *op. withdrawn,*

807 S.W.2d 577 (Tex.1991). In *McClendon,* the Texas Supreme Court attempted to expand the narrow public policy exception to hold that the employment-at-will doctrine does not bar employees from recovering damages if they can prove the employer fired them to avoid contributing to or paying benefits under a pension plan. *McClendon,* 779 S.W.2d at 71. The United States Supreme Court, in reversing the Texas Supreme Court, determined that ERISA preempted McClendon's state law claim. *Ingersoll-Rand,* 498 U.S. at 145, 111 S.Ct. 478.

tion in *Sabine Pilot* and has prescribed the area for relief. The supreme court has also emphasized its hesitation to create new common-law causes of action. We are obligated to follow the law as stated by the Texas Supreme Court and, therefore, cannot broaden the deliberately narrow exception it created in *Sabine Pilot* to include this cause of action. *See Hancock,* 800 S.W.2d at 636; *see also Winters v. Houston Chronicle Publ'g Co.,* 781 S.W.2d 408, 409 (Tex.App.—Houston [1st Dist.] 1989), *aff'd,* 795 S.W.2d 723 (Tex.1990).

■ Moreover, the *Sabine Pilot* exception does not provide an appropriate remedy for a "just cause" employee like appellee. As an exception to the employment-at-will doctrine, the *Sabine Pilot* exception applies only to at-will employees. *See Salmon v.. Miller,* 958 S.W.2d 424, 430 (Tex.App.—Texarkana 1997, pet. denied) (holding that the *Sabine Pilot* exception did not apply because the employee was not an at-will employee). Although the *Sabine Pilot* exception may act as a deterrent to employers who would otherwise pressure employees to perform illegal acts or lose their jobs, the *Sabine Pilot* exception was created to benefit at-will employees who would have no recourse but to accept termination if they refused to perform an illegal act. That is not the case in a "just cause" employment relationship. In those circumstances, as is the case here, the employee has guaranteed contractual protections. Here, the CBA provided that appellee could only be discharged for "just cause." The CBA also provided appellee with grievance and mandatory arbitration procedures to challenge his termination. Extending the *Sabine Pilot* exception to "just cause" employees is unnecessary because express contractual limits on an employer's right to terminate protect the "just cause" employee's rights. *Cf. O'Bryant,* 18 S.W.3d at 216 (holding there is no duty of good faith and fair dealing in the employment context and stating that such a duty would be unnecessary in "just cause" employment relationships because the employee is protected by express contractual limitations on the employer's right to terminate). Whereas an at-will employee has no recourse if he has been wrongfully terminated and does not fall under the *Sabine Pilot* exception or one of the statutory exceptions, a "just cause" employee has his contractual remedies available, and may have additional statutory remedies available to him as well. Because we conclude appellee, as a "just cause" employee, did not have a cause of action under the *Sabine Pilot* exception, we do not address Simmons's remaining nine points of error.

For all of the foregoing reasons, we sustain Simmons's first point of error, reverse the trial court's judgment, and render a take-nothing judgment against appellee.